SCHULTZ ET AL., APPELLANTS, v. MEYERHOLTZ, APPELLEE.

(No. 260—Decided November 5, 1951.)

Mr. John B. Morton, for appellants.
Messrs. True & Meyer, for appellee.

FESS, J.  This is an appeal on questions of law from a judgment entered upon a verdict for defendant returned by the jury upon direction of the court at the conclusion of plaintiffs' case.

The action was brought on behalf of Ralph Schultz and The Grain Dealers National Mutual Fire Insurance Company (under an alleged subrogation agreement) against the defendant for damages to Schultz's truck resulting from a collision with a steel shovel or bucket moving or hanging over the highway, obstructing plaintiff's line of travel.  At the time of the collision, defendant was engaged in digging or cleaning a ditch running along the westerly side of the highway (a county road) with a large caterpillar ditcher with a shovel having a 3/4-yard dragline and a 40-foot boom.  The operation was proceeding in a northerly direction and consisted of depositing the earth and debris on a field farther to the west of the ditch and highway.  When the ditching was in the neighborhood

of a telephone pole, the boom and shovel would be operated over the road to the right or east and around the rear of the outfit over onto the field; otherwise the shovel would be lifted from the ditch over to the field on the left or west. Plaintiff was aware that the ditcher was operating along the highway. He saw it first when about a half mile away. He stopped his truck about 100 yards south of the ditcher and spent a half hour or so conversing with a Mr. Grau, who was engaged in repairing a corn picker in the field along the road. During this interval, the ditcher was visible to the plaintiff but he said that at no time did he observe the shovel over the highway. After talking to Mr. Grau, plaintiff got into his truck and started north. He stated he was traveling in second gear and that he was going 5 or 6 miles per hour when he saw the shovel, possibily 10 or 15 feet ahead. He made no effort to apply his brakes but when he saw the bucket he laid down on the seat. "The only thing I could do was lay down. I didn't have time * * * didn't have time to stop."

On cross-examination defendant said that he had a man on the road watching traffic. Plaintiff testified that he saw no one in the road between him and the shovel but there was a man sitting in the ditch alongside the bank, and "If he had been there to warn traffic he would have had a flag, or something."

Defendant said that he would scoop up a shovel full of dirt and deposit it about twice a minute: that where a telephone pole was in the way he had to swing the scoop around over the highway; and that he had seen the plaintiff's truck parked on the side of the road. He said:

"I didn't see it when he got into it; I looked down the road, there was nothing coming, and when I swung around this way, of course, and naturally he was right there, and that is the first I saw it. * * * I saw

him and then I stopped it (the boom) and started to reverse it. Of course, I could not reverse it fast enough to be out of the way."

█ Defendant contends that there was no evidence of negligence on the part of the defendant. Plaintiff had the right to proceed lawfully upon the highway, but the right of transit in the use of a public highway is subject to such incidental, temporary, or partial obstructions as manifest necessity requires, and among these are the temporary impediments necessarily occasioned by the digging of a ditch along the highway. Such temporary impediments are not invasions but qualifications of the right of transit on the highway and, when guarded with due care to prevent danger to the public, are not nuisances. Cf. *Clark* v. *Fry,* 8 Ohio St., 358, 72 Am. Dec., 590. Defendant was engaged in a lawful operation, but his operation of the boom and bucket over and into the traveled portion of the highway presented a hazard to the traveling public and the possibility of injury by the sudden injection into the highway of an obstruction. Defendant was bound to exercise ordinary care to prevent injury. He had a watchman, but, under the evidence which the trial court was bound to believe, the watchman was not performing his duty to warn the plaintiff as a traveler on the highway. Whether defendant failed to exercise ordinary care under the circumstances and, if so, whether such failure proximately caused plaintiff's damage were questions for the jury.

█ Defendant contends further that the petition does not state a cause of action in favor of the plaintiff Schultz, inasmuch as it alleges that all his rights were assigned to the insurance company. But the petition alleges that the insurance company became subrogated *to the extent of its payment to* Schultz, to all of Schultz's claim against the defendant. Under the liberal rule of construction of pleadings, it can

not be held that Schultz assigned all his claim to the insurance company.

■ Defendant contends further that the insurance company failed to prove its right to subrogation or its right to prosecute the action.

Plaintiff Schultz testified that his truck was worth $1,500 before and $600 after the accident, that he paid $100 on the repair bill, and that the insurance company paid the balance. When asked about the subrogation agreement, the witness became confused. When asked whether a certain instrument was a copy of a receipt he signed for the insurance company at the time the truck was repaired he said yes, but the objection of the defendant was sustained on the ground that the question related to a copy rather than the original document. He was then asked whether he had signed any agreement with the insurance company and he said, "No." Later on, after a recess, he was again asked and he said that he probably signed some papers but had no recollection of having done so. Counsel's request to continue the trial to the following morning, when he could produce the original subrogation agreement which was in the mail from the company, was denied. The denial of this request was within the discretion of the court. The local agent for the insurance company testified that the truck was insured under a policy issued by the plaintiff insurance company for collision, with $100 deductible, and fire and theft for $1,200. Evidence concerning the office records regarding the disposition of Schultz's claim was excluded. Under the proffer, it appears that the Western Adjustment Company, under date of December 15, 1947, wrote the local agent: "Included herewith find bill for the repair of Ralph Schultz's truck in the amount of $587.71. Mr. Schultz has paid the hundred dollars deductible collision to the body shop in order to get his truck out of the garage." The witness was

not asked whether the claim was paid by the insurance company.

But there was evidence that the plaintiff insurance company carried the risk and Schultz did say that he paid $100 on the repair bill and that the insurance company paid the rest. The truth of his statement and means of knowledge of the payment presented a question of credibility for the jury. In a controversy between insured and insurer, it would be necessary for the latter to prove subrogation; but the defendant is not prejudiced by the failure to prove a subrogation agreement, and a recovery can be had in the absence of proof of such an agreement. *Northwestern Ohio Natural Gas Co.* v. *First Congregational Church of Toledo,* 126 Ohio St., 140, 184 N. E., 512.

■ Defendant further contends that without the application of the "assured-clear-distance" rule, plaintiff was guilty of contributory negligence as a matter of law in making no attempt to stop his truck after seeing the shovel in front of him in the highway. Defendant takes the position that since plaintiff was driving at only six or seven miles per hour when he saw the shovel ten or fifteen feet away, he could have stopped the truck immediately and thus avoided the collision. This argument could be presented in every case involving the exception to the assured-clear-distance rule, *i. e.,* the sudden emergence of a moving object within a driver's line of travel. But the question whether the driver could have stopped in time and also whether such driver failed to exercise due care under the circumstances when confronted with an emergency are matters for the jury under appropriate instructions of the court. The question is not what a careful person would do under ordinary circumstances, but what would he be likely to do, or might reasonably be expected to do, when confronted with peril, and is one

of fact for the jury. *Pennsylvania Rd. Co.* v. *Snyder,* 55 Ohio St., 342, 45 N. E., 559, 60 Am. St. Rep., 700.

■ Finally defendant contends that plaintiff is guilty of negligence per se in violating the assured-clear-distance rule, upon authority of *Schroff* v. *Foley Construction Co.,* 87 Ohio App., 277, 94 N. E. (2d), 641; *Bickel* v. *American Can Co.,* 154 Ohio St., 380, 96 N. E. (2d), 4; and *McFadden, Admx.,* v. *Breuer Transportation Co.,* 59 Ohio Law Abs., 163,\* recently decided by the then members of this court. The *Schroff* and *McFadden cases* involved static discernible objects in the highway. In the *Bickel case,* the Court of Appeals sought to apply the exception to the rule to the sudden stopping of an automobile in the path of a following vehicle. The Supreme Court, in reversing the judgment of the Court of Appeals, held there is no distinction to be made with reference to a discernible object within the assured clear distance, based upon whether that object is moving at a normal speed, a slow speed or is static. It did not modify but approved the rule announced in the second paragraph of the syllabus in *Smiley* v. *Arrow Spring Bed Co.,* 138 Ohio St., 81, 33 N. E. (2d), 3, 133 A. L. R., 960.

Construing the evidence most strongly in favor of the plaintiff (*Hamden Lodge* v. *Ohio Fuel Gas Co.,* 127 Ohio St., 469, 189 N. E., 246; *Wilkeson, Admr.,* v. *Erskine & Sons, Inc.,* 145 Ohio St., 218, 61 N. E. [2d], 201; *Purdy, Admr.,* v. *Kerentoff,* 152 Ohio St., 391, 89 N. E. [2d], 565), it does not disclose a violation of the assured-clear-distance rule and contributory negligence as a matter of law.

*Judgment reversed.*

Conn and Savord, JJ., concur.

---

\*Reversed, 156 Ohio St., 430, subsequent to the rendering of the opinion in the instant case.