DECISION AND JOURNAL ENTRY
Susan Stone appeals the decision of the Lorain County Court of Common Pleas, following a jury trial, denying her motion for a new trial or additur. We affirm.
 I.
On December 29, 1994, Susan Stone was sitting in her car at a stop light. Appellee Joseph Patarini was driving behind Stone, but did not notice that Stone's car was stopped at the light. Patarini hit the rear end of Stone's car, causing damage to both vehicles. Although she did not notice any immediate physical injury to herself, the next day Stone experienced pain in her neck and upper back. She returned to work the Monday after the holiday weekend, but went to see a doctor the following day and took off four days from work due to the pain. Over the next month, the neck and upper back pain subsided, but Stone noticed problems in her lower back. Despite several years of treatment, the lower back pain persisted.
On December 23, 1996, Stone filed suit against Patarini, Patarini's wife who owned the car Patarini was driving, and Stone's automobile insurer Grange Mutual Casualty Co. Later, Medical Mutual, Stone's health insurer, was joined as a necessary party in interest because of its subrogation rights. Ultimately, Stone voluntarily dismissed her claim against Mrs. Patarini, Medical Mutual settled with Patarini for the amount Medical Mutual paid for Stone's medical bills, and the court determined that Grange was obliged to pay only if the jury awarded damages in excess of Patarini's insurance coverage.
Patarini had already admitted negligence by the time the case went to a jury trial. Thus, the sole issue to be decided was the amount of damages proximately caused by the accident. Medical Mutual had paid approximately $13,750 for Stone's medical treatment, representing substantially all of Stone's medical bills, by paying the medical providers a reduced sum of approximately $5,400, per their contract agreement. In turn, Medical Mutual settled with defendant Patarini for approximately $3,500. Since Patarini had settled with Medical Mutual, he filed a motion in limine to exclude from evidence all but Stone's actual out-of-pocket medical expenses, amounting to approximately $500. Stone argued that all the medical bills should be admitted, not as evidence of the reimbursement to which she was entitled, but as evidence of the extent of the injuries Stone sustained, and the likely amount of future medical costs. The court granted Patarini's motion in limine, and excluded the full amount of the medical bills that were disposed of by Medical Mutual.
The jury rendered a verdict in favor of Stone, in the amount of $2,500. Stone filed a motion for a new trial, or in the alternative, for additur. Stone's motion for a new trial asserted that the trial court erred in excluding the medical bills and that the verdict was against the manifest weight of the evidence. The trial court denied the motion, and Stone filed the instant appeal, asserting that the trial court erred when it excluded the medical bills from evidence, and when it denied the motion for a new trial or additur.
 II. THE COURT ERRED IN EXCLUDING THE PLAINTIFF'S MEDICAL BILLS FROM EVIDENCE BECAUSE THOSE BILLS WERE PART OF THE DAMAGE SHE SUSTAINED, AND WERE RELEVANT AND PROBATIVE EVIDENCE OF THE SEVERITY OF HER INJURIES AND THE COST OF FUTURE MEDICAL TREATMENT.
 On appeal, Stone challenges the exclusion of the medical bills because she claims she was entitled to receive the full amount of her medical bills, approximately $13,750, as the measure of damages sustained, and because the exclusion of the bills from evidence deprived the jury of a full understanding of the extent of past and future injuries.
Measure of Damages
Stone asserts on appeal that she was entitled to be compensated for the total amount of her medical expenses paid for by Medical Mutual because those expenses were a measure of her actual damages. This claim is not well taken. Before the jury was sworn in, the court dealt with Patarini's motion in limine to exclude the medical bills paid for by Medical Mutual. In discussing the issue, Stone's attorney told the judge, "we don't want to mislead the jury into any belief that she paid that $13,750. We're prepared to acknowledge to the jury that she did not, that they should not award her reimbursement of that $13,750." Thus, assuming, without deciding that Stone was entitled to receive the amount of her medical expenses paid by Medical Mutual, she has waived any such right.
In her motion for a new trial, Stone asserted that the trial court erred in excluding the subject medical bills because they are a measure of her damages. However, applying the doctrine of invited error, the trial court was correct to deny a new trial on the basis of this issue. "A party will not be permitted to take advantage of an error which he himself invited or induced the trial court to make." Lester v. Leuck (1943), 142 Ohio St. 91, syllabus. Nor can Stone prevail on this claim on appeal. This portion of Stone's first assignment of error is not well-taken.
 B. Medical Bills as Evidence of Future Damages
While the court was considering Patarini's motion in limine, Stone asked the trial court to admit into evidence the medical bills that Medical Mutual had paid, while also informing the jury that the bills had been paid by Medical Mutual. Stone argued at trial, and now asserts on appeal, that the medical bills should have been admitted as relevant evidence of future medical expenses and the extent of her physical injury.
It is well established that a "trial court has broad discretion in the admission * * * of evidence and unless it has clearly abused its discretion and the defendant has been materially prejudiced thereby, [an appellate] court should be slow to interfere." (First alteration in original.) State v. Maurer
(1984), 15 Ohio St.3d 239, 265, certiorari denied (1985),472 U.S. 1012, 86 L.Ed.2d 728, quoting State v. Hymore (1967),9 Ohio St.2d 122, 128, certiorari denied (1968),390 U.S. 1024, 20 L.Ed.2d 281. Abuse of discretion is not a mere error of judgment, rather it is "perversity of will, passion, prejudice, partiality, or moral delinquency." State ex rel. Shaferv. Ohio Turnpike Comm. (1953), 159 Ohio St. 581, 590-591.
In Ohio, a plaintiff must establish future medical expenses by testimony of expert witnesses. See, generally, Day v. Gulley
(1963), 175 Ohio St. 83, 86-87, citing Tully v. Mahoning ExpressCo. (1954), 161 Ohio St. 457; Brooks v. Wilson (1994), 98 Ohio App.3d 301,307. An award of future damages is limited to damages reasonably certain to occur from the injuries. See Hammerschmidtv. Mignogna (1996), 115 Ohio App.3d 276, 281-282. Thus, a plaintiff's claim for future medical expenses must be supported by evidence that reasonably establishes the amount likely to be incurred for the future medical treatment. Id.
Stone maintained that the past medical bills should be introduced as some evidence of her future medical expenses arising from her injury. However, the past medical bills are not relevant evidence of future medical expenses, and as such they were properly excluded. Evid.R. 401. The excluded evidence, if admitted, would not have achieved the end which Stone needed to achieve, namely to establish an amount for damages for future medical expenses that she is reasonably likely to incur.
Stone offered the testimony of an expert witness concerning her injury and the likelihood of her need for future treatment. Furthermore, Stone had the opportunity to present expert testimony as to the cost of the future treatment that her other expert witness had already established was reasonably necessary. This she did not do.
This court cannot say that the trial court abused its discretion in excluding the subject medical bills as evidence of future medical expenses or that Stone was materially prejudiced thereby.
 C. Medical Bills as Evidence of Severity of Injury
Stone also asserts that the medical bills should have been admitted as evidence of the severity of her injuries. This assertion is not well taken. Stone testified herself as to her pain and suffering, the extent of the medical treatment she received, and the physical limitations that resulted from her injuries. Her treating physician also testified as to her injuries and the treatment involved. The medical bills had little probative value to establish the extent of Stone's injury not established by other sources. This court cannot say that the trial court abused its discretion in excluding the medical bills from evidence on this basis. Stone's first assignment of error is overruled.
 III. II. THE JUDGMENT BELOW SHOULD BE VACATED AND PLAINTIFF SHOULD BE GRANTED A NEW TRIAL BECAUSE THE AWARD OF DAMAGES IS INADEQUATE AND AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE.
 III. THE TRIAL COURT ERRED IN NOT GRANTING THE PLAINTIFF'S MOTION FOR A NEW TRIAL.
 Stone filed a motion for a new trial, pursuant to Civ.R. 59, stating that the trial court erred in excluding the medical bills, that the verdict was against the weight of the evidence, and that the damages were inadequate. Because we have addressed the trial court's evidentiary ruling above, we now review as to the manifest weight and the inadequate damages issues.
Upon a motion for a new trial pursuant to Civ.R. 59, the trial court possesses broad discretion of whether to grant or deny a new trial. Poske v. Mergl (1959), 169 Ohio St. 70, paragraph one and two of the syllabus. When an appellate court reviews a trial court's denial of a new trial based on a manifest weight argument, "a reviewing court can reverse such an order for a new trial only upon a finding of an abuse of discretion." Malone v.Courtyard by Marriott L. P. (1996), 74 Ohio St.3d 440, 448, citingRohde v. Farmer (1970), 23 Ohio St.2d 82, paragraph one of the syllabus. Abuse of discretion is found only where the trial court's decision is unreasonable, arbitrary or unconscionable.Malone, 74 Ohio St.3d at 448, quoting Poske v. Mergl, 169 Ohio St. at 75. In applying the abuse of discretion standard, the reviewing court must "view the evidence favorably to the trial court's action rather than to the original jury's verdict."Malone, 74 Ohio St.3d at 448, quoting Rohde, 23 Ohio St.2d at 94.
At trial, the court admitted into evidence the pretrial deposition testimony of several physicians and Stone's medical records. Although Stone's long-standing treating physician did not testify, Stone's medical records from this physician were admitted into evidence. Stone, her husband, and another expert witness testified at trial on Stone's behalf.
Stone testified that following the accident she initially experienced neck pain but that later she experienced lower back pain. The neck pain abated shortly after the accident, but the back pain continued and required ongoing treatment. There was some evidence that Stone had a history of back pain that predated this accident. Numerous symptoms which appeared after the accident were similar to those experienced by Stone over a period of years prior to the accident. Although Stone complained of problems sleeping after the accident, she admitted that she had been taking the same sleeping medication since the early 1990's, approximately two years prior to the accident.
Stone maintained a diary in which she claimed that she recorded the time she took off work, and that she specifically noted if it related to her back injury. In one instance, Stone missed work for an entire week, and she noted in her diary that it was related to her back. When challenged by defense counsel, Stone admitted that she missed work that week due to an unrelated medical problem. Stone claimed that she missed over six hundred hours of work after the accident, due to the pain she experienced. However, during January 1995, only weeks after the accident, Stone regularly worked nine- and ten-hour days. Stone maintained at trial that both the neck pain, which she experienced immediately after the accident, and the lower back pain were related to the accident. However, the back pain did not surface until some two to four weeks after the accident, and Stone could not recall exactly when the back pain became a problem.
One physician testified that Stone would likely need sporadic treatment in the future because she would experience episodic exacerbation of the pain. Stone testified that generally her lower back pain was "distressing," but that she experienced two occasions when the pain was unbearable, once in May 1996 and once in September 1996. Thus, when she testified in August 1998, Stone had not experienced an episode of extreme pain for almost two years. In fact, Stone's last physical therapy session occurred in January 1997.
There was sufficient conflicting evidence to permit the jury to reasonably conclude that the back pain, which necessitated the most medical care and which caused Stone the most physical pain, was not caused by the accident. There was expert medical testimony that Stone would likely need future medical care for her back pain. However, Stone testified that she had not had any physical therapy for eighteen months. Thus, even assuming that the back pain was caused by the accident, there was evidence that future medical care for the back pain was likely to be minimal. Finally, there was sufficient conflicting evidence to permit the jury to reasonably conclude that the suffering Stone experienced related to the back pain was less severe than Stone claimed.
In the instant case the evidence was such that reasonable minds could come to different conclusions about whether the accident caused Stone's back pain and whether, if it was the cause, future medical expenses would result. "Judgments supported by some competent, credible evidence going to all the essential elements of the case will not be reversed by a reviewing court as being against the manifest weight of the evidence." The C. E.Morris Co. v. Foley Constr. Co. (1978), 54 Ohio St.2d 279, syllabus. The trial court did not abuse its discretion when it denied Stone's motion for a new trial on the manifest weight issue.
Stone requested that the court grant an additur in the event that it did not grant her a new trial. Additur is appropriate where it appears that the verdict was rendered under the influence of passion or prejudice. Civ.R. 59(A)(4); see, also, Brooks,98 Ohio App.3d at 307 (discussing remittitur under Civ.R. 59). Having concluded that reasonable minds could have come to different conclusions based on the evidence, it does not appear that the verdict was the result of passion or prejudice. The trial court did not abuse its discretion in denying Stone's motion for additur. Stone's second and third assignments of error are overruled, and the judgment of the trial court is affirmed.
 __________________ WILLIAM R. BAIRD FOR THE COURT
The Court finds that there were reasonable grounds for this appeal.
We order that a special mandate issue out of this Court, directing the Court of Common Pleas, County of Lorain, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.
Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App.R. 22(E).
Costs taxed to Appellant.
Exceptions.